EDMOND B. NEWTON *et al.* v. STEPHEN LYON *et al.*

No. 11,719. (62 Pac. 1000.)

1. AGREEMENT TO DEVISE LAND— *Specific Performance.* A note or memorandum in writing of an agreement to devise land, made upon sufficient consideration and signed by the person making it, may be enforced against his heirs or devisees by an action to compel a conveyance from them in specific performance of the promisor's agreement.

2. ——— *Statute of Frauds.* Facts stated in a petition held to be sufficient allegations of a note or memorandum in writing of an agreement to devise real estate to satisfy the statute of frauds.

Error from Labette district court, A. H. SKIDMORE, judge. Opinion filed December 8, 1900. Reversed.

*M. E. Williams*, for plaintiffs in error.

*A. D. Neale*, for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action by Edmond B. and Harriet S. Newton against Stephen and Cornelia Lyon and George and Josie Hitchcock to compel the

execution of a conveyance of a quarter-section of land in specific performance of an agreement which Elam S. Hitchcock, the ancestor of defendants and a former owner of the land, had made to devise it by last will to the plaintiffs. A demurrer to the petition was sustained and from the judgment sustaining it error has been prosecuted to this court. A summary of the facts stated in the petition is as follows : The plain- tiffs, Edmond and Harriet S. Newton, are husband and wife, and said Harriet is the daughter of Elam S. and Susan B. Hitchcock, both now deceased. Stephen and Cornelia Lyon are husband and wife, as likewise are George and Josie Hitchcock. The said Cornelia and George are also children of the said Elam S. and Susan B. Hitchcock, and they, with the aforesaid Har- riet, are the only children and heirs of the deceased Hitchcocks. Elam S. Hitchcock, the father, was the owner of certain town lots and also the owner of a quarter-section of land, the latter being the only farm land owned by him. About 1872 the plaintiffs, the Newtons, built a dwelling-house on the town lots, at a cost of about $500, and occupied it for a short time, under an agreement that such town property should be eventually conveyed to the daughter, Harriet, but the father and mother presently took possession of it and resided on it for many years without paying rent therefor, and without conveying it or repaying the money expended in constructing the dwelling, prom- ing, however, from time to time, to do so. August 18, 1882, the father wrote a letter to his son-in-law, New- ton, seemingly in reply to one previously received from the son-in-law, or in reference to some previous conversation had between them concerning the dispo- sition of the father's property between his children. This letter does not make any specific promise of con-

veyance or devise of property to the son-in-law, but implies that the subject is under consideration, and that the expenditure of money by the Newtons upon the town lots is to be taken into account, and that the son-in-law may have an option to take the quarter-section of land as against the town lots and some personal property. August 23, 1882, Newton, the son-in law, wrote a letter to the father in acknowledgment of the receipt of the letter from the latter, in which he expressed satisfaction with the view entertained by the father concerning the disposition of his property, and, among other things, said : "I am willing to be bound to such a settlement of affairs and take the farm." In September following, the father wrote again to the son-in-law, as follows :

"Yours of August 31 is received. I have told you in a former letter what my mind was in regard to what property I have left and the division as near as the circumstances would permit. And now you are at liberty to make your choice (which is the advantage I give) which you would like. If you want the farm, you may consider you get your $500 back in it, or if you prefer the other say so very soon, as I intend to make writings before long and such as will stand after I am gone, that there will be no controversy."

The petition also stated that it was agreed between the Newtons and the father that a testamentary devise of the land would be satisfactory to the former ; that the father and mother might retain the land during their lives and enjoy the rents and profits of it, and that they, the Newtons, would, as they might be able and as was necessary, advance money to improve the farm and pay the taxes on it. Some letters from the father to the son-in-law were attached to the petition as exhibits, which quite satisfactorily showed

Newton v. Lyon.

that money was advanced by the latter over a number
of years for such purposes.

The petition further alleged that the father, in exe-
cution of the agreement before spoken of, did execute
his last will and testament, devising the farm to the
daughter Harriet, but that he, by codicil and without
the consent of the plaintiffs, subsequently revoked such
devise and vested the title to the land, upon his death,
equally among his three children.   Attached to the
petition is a copy of the will and codicil referred to,
by which it appears that in 1891 the testator devised
all his property, both real and personal, to his wife,
Susan, during her natural life, with a direction that
his executors sell the land when a mortgage that ex-
isted on it became due, and from the proceeds pay,
first, the mortgage indebtedness, and secondly, invest
the remainder in securities and apply the income from
them to the support of his wife, and should that not
be sufficient, that the principal be applied to her main-
tenance.   The will further directed, that upon the
death of the testator's wife, all remaining real and
personal estate should go to his daughter Harriet, sub-
ject to the payment of legacies of $500 each to his
daughter Cornelia and his son George.   In 1892 the
testator added to his will a codicil, declaring that he
did "hereby give and bequeath, out of the personal
and real property bequeathed to my daughter, Harriet
S. Newton, as set forth in above will," legacies of
$100 each to the home and foreign missionary socie-
ties of the Presbyterian church.   In 1894 the testator
added a second codicil, devising and bequeathing all
of his property to his wife, and directing that upon her
death all of it then remaining should be divided in
equal parts among his children, Cornelia, George, and

Harriet. The wife died before the testator did, and therefore the will never took effect as to her.

The above epitomizes the facts alleged in the petition. In our judgment they state a cause of action, and therefore the demurrer was improperly sustained. An agreement in writing, made upon sufficient consideration, to devise real estate, is enforceable by specific performance against the heirs or devisees of the testator. (Fry. Spec. Perf., 3d ed., § 223 ; Waterm. Spec. Perf. § 41.) The writings attached as exhibits to the petition, being signed by the party to be charged, when explained in the light of the facts and circumstances set forth in the pleading, are sufficient notes or memoranda of an agreement in respect to the land to satisfy the requirements of section 6 of the statute of frauds. (Gen. Stat. 1897, ch. 112, § 6 ; Gen. Stat. 1899, § 3072.)

The case is discussed by counsel for defendants in error and to a large extent by counsel for plaintiffs in error as though the agreement to devise was enforceable, if at all, as a trust resting upon the testator, Elam S. Hitchcock, and as though the validity or execution of such agreement depended upon an interpretation of the statute concerning trusts. This is not the case. The only statute bearing on the subject is the statute of frauds, and the only general question involved in it is the one relating to the enforceability of agreements, upon consideration, to devise lands. The judgment of the court below is reversed, with directions to overrule the demurrer to the petition.