WALTER V. NELSON, *Appellee*, v. CLARENCE SCHOON-
OVER *et al., Appellants*.

No. 18,102.

SYLLABUS BY THE COURT.

1. ORAL CONTRACT—*To Devise Property—Action for Specific
   Performance.* An action against heirs or devisees, to acquire
   title to real property because the decedent under whom they·
   claim had agreed to leave it by will to the plaintiff, is in the
   nature of one for specific performance of a contract to convey
   land, and in the trial thereof a jury can not be demanded as a
   matter of right.

2. ORAL CONTRACT—*To Devise Property—Good Consideration—
   Enforceable—Statute of Frauds.* An oral agreement between
   husband and wife that she will make a will leaving to him all
   the property owned by her at the time of her death, both real
   and personal, in consideration of real estate owned by him be-
   ing conveyed to her, is rendered enforceable, notwithstanding
   the statute of frauds, where in accordance with its provisions
   the title to land paid for by the husband is taken in the wife's
   name, and she makes such a will, and thereafter in reliance
   thereon he expends labor and money in improving the property.

3. WILL—*Agreement—Valuable Consideration—Both Contractual
   and Testamentary.* A will executed under an agreement
   founded upon a valuable consideration is contractual as well
   as testamentary. In the latter aspect it may be revoked with-
   out the consent of the beneficiary, but not in the former. Its
   revocation as an instrument capable of probate is effected by
   the execution of a new will, and this may be enforced so far as
   the provisions of the earlier will, which are based on con-
   tract, are not violated, but no further.

4. ——— *Devises — Property Subject to Payment of Debts.*
   Notwithstanding an agreement by a wife, founded upon a
   valuable consideration, to leave to her husband by will the
   property owned by her at the time of her death, such prop-
   erty will be subject to sale by the executor where that is nec-
   essary for the payment of valid demands against the estate
   or of the costs of administration.

5. ——— *Certain Provisions therein Enforceable.* Where a
   testatrix, in pursuance of a contract with her husband, exe-
   cutes a will leaving to him all her property, with a proviso
   that, at such time as he could without inconvenience, he should

Nelson v. Schoonover.

pay a stated amount to her son, a subsequent will undertaking to give half her property to a trustee for the benefit of her son may be enforced to the extent of requiring the payment of such amount to the trustee.

Appeal from Butler district court.    Opinion filed April 12, 1913.    Modified.

*J. K. Codding,* of Lansing, *George J. Benson,* and *T. A. Kramer,* both of El Dorado, for the appellants.

*H. W. Schumacher, A. L. L. Hamilton,* and *B. R. Leydig,* all of El Dorado, for the appellee.

The opinion of the court was delivered by

MASON, J.: Nancy G. Nelson died, leaving a will, executed shortly before her death, which was admitted to probate. By it she undertook to give one-half of her property to her husband, Walter V. Nelson, and the other half to her executor in trust for Clarence Schoonover, her son by a former marriage. Her husband brought action against her son and the executor, claiming to be entitled to all the real estate standing in the name of his wife at the time of her death. The petition alleged in substance that Nelson and his wife some years before had orally agreed that all real estate acquired by either of them should be deeded to her, and that she would make a will leaving to him all property, both real and personal, of which she died possessed; that thereafter, in pursuance of this arrangement, the real estate in question was purchased with means furnished by him, the title being taken in her name, and she executed such a will and delivered it to him; that in reliance on the agreement he had expended money and labor improving the real estate; that in some way unknown to the plaintiff this will had disappeared, and could not be found. These allegations were denied by the defendants. Upon the trial the court found for the plaintiff upon all the issues thus raised. Judgment

was rendered setting aside the will, decreeing the plaintiff to be the owner of the real estate in controversy, requiring the defendants to convey it to him, and providing that upon their failure to do so, the decree should operate as a conveyance. The defendants appeal.

A number of special findings were made. Some of them are attacked by the defendants, but we think there was sufficient evidence to support at least such of them as are of present importance, and they will be treated as the established facts of the case. The plaintiff testified in detail as to the contents of the first will. The court afterwards struck out this testimony. Apart from it, however, there was sufficient evidence that Mrs. Nelson had made a will at the time indicated, that it was made in pursuance of an agreement with her husband, and that this agreement was substantially as claimed by him. The finding as to the execution of the will, and as to its contents so far as here important, is therefore supported by evidence outside of the plaintiff's own testimony.

Some features of the case—some phases of the pleading, evidence, findings and judgment—tend to suggest that the action is one to enforce a trust with respect to real estate, growing out of an oral agreement. If it were to be regarded in that light, there might be some difficulty in determining whether under all the circumstances it could be enforced, in view of the statute requiring express trusts concerning lands to be in writing. (Gen. Stat. 1909, § 9694.) In somewhat similar situations an implied trust has been held to arise out of the confidential relations existing between husband and wife (Note, 39 L. R. A., n. s., 925) ; and a part performance has been held to take such a case out of the statute (same note, p. 928). Taking the pleadings, evidence and findings as a whole, however, the plaintiff's right of action does not appear to be grounded upon the creation of an express trust. Under the

agreement between him and his wife her title to the real estate was not one thing in law and another in equity. She did not have merely a life estate. Her title was just what it appeared to be. She was the actual owner of the property. She did not even undertake to keep it during her lifetime and see that the title passed to her husband at her death. She merely contracted that whatever property she might own at her death should go to him by her will. The action, therefore, must be regarded as essentially one for the specific performance of a contract to make a will in the plaintiff's favor. "An agreement in writing, made upon sufficient consideration, to devise real estate, is enforceable by specific performance against the heirs or devisees of the testator." (*Newton v. Lyon,* 62 Kan. 306, 310, 62 Pac. 1000; *Bless v. Blizzard,* 86 Kan. 230, 120 Pac. 351; *Dillon v. Gray,* 87 Kan. 129, 123 Pac. 878; 30 A. & E. Encycl. of L. 621.) Whether or not the relief sought is described with technical accuracy as specific performance, it is of that nature.

"An agreement to make a certain disposition of property by will is one which, strictly speaking, is not capable of a specific execution, yet it is within the jurisdiction of a court of equity to do what is equivalent to a specific performance of such an agreement. Such a contract is enforced after the death of the promisor by fastening a trust on the property in the hands of heirs, devisees and personal representatives and others holding the property with notice of the contract or as volunteers." (36 Cyc. 735.)

An action of this character is clearly equitable, and the defendants' demand for a jury was properly denied. (36 Cyc. 788; see, also, *Hospital Co. v. Philippi,* 82 Kan. 64, 107 Pac. 530, 30 L. R. A., n. s., 194.)

The original agreement between the husband and wife, as it included a contract to devise real estate, was within the statute of frauds. (Note, 14 L. R. A. 862; Note, 5 A. & E. Ann. Cas. 495; Note, 20 A. & E. Ann. Cas. 1137; Note, 102 Am. St. Rep. 240.) However,

the conveying of the real estate to his wife, the actual making of the will, and the improvement of the property by the plaintiff in reliance upon the agreement, are sufficient to take the case out of the statute, viewed as part performance, accompanied by such a change of conditions as to make the denial of enforcement inequitable. (Note, 14 L. R. A. 863; Note, 102 Am. St. Rep. 241.) The will itself has been treated as such a memorandum of the agreement as to satisfy the statute. (*Whiton v. Whiton,* 179 Ill. 32, 53 N. E. 722; *Shroyer, Appellant, v. Smith,* 204 Pa. St. 310, 54 Atl. 24; see, also, 29 A. & E. Encycl. of L. 854.)

A will duly executed, in pursuance of an agreement based upon a valuable consideration, becomes itself, in a sense, an enforceable contract. The testator can not, by making a later will, escape the obligation confirmed by the first one. (40 Cyc. 1068; Schouler on Wills, 3d ed., § 452.) The delivery of the will to the beneficiary has been treated as of importance in emphasizing the contractual feature of the transaction (40 Cyc. 1068, note 2), but has been said not to be essential (*Johnson et al. v. McCue et al.,* 34 Pa. St. 180).

These considerations lead to the conclusion that the plaintiff was entitled to relief, but not necessarily to the full extent of that granted by the trial court. There is no suggestion of a purpose to have the first will enforced as such. By making it, Mrs. Nelson confirmed her obligation to make her husband her devisee and legatee, but she did not necessarily incapacitate herself from making a later will which should be valid except so far as it should impinge upon this obligation. (40 Cyc. 1074.)

"One may bind oneself to make a bequest or devise of a certain amount or of a certain piece of property, or perhaps of what one now owns. . . . That is only saying, that the relation of debtor and creditor having been created, it may be agreed between the parties that the creditor's claim shall be paid after the

debtor's death out of property of the debtor now, it may be, specifically designated for the purpose. That agreement may, in a case otherwise proper, be specifically enforced against the debtor's estate after his death. . . . Without making any such agreement at all, the debtor may become so involved as not to be able to dispose of his property by will, except to his creditors according to their rights. But he may make and revoke wills notwithstanding; and his acts may be perfectly good as testamentary acts, i. e., acts entitled to probate. Thus, having made a will in accordance with a binding agreement to devise a certain piece of land, he may revoke the will entirely, so that the instrument can not be admitted to probate at all, or he may revoke the particular devise, so that it can be admitted to probate only as it stands after the act of revocation. . . . Nor would any court attempt to restrain him from the act. The agreement, however, would of course be binding still. Nothing more than this is in reality meant by such a statement as that in *Anding v. Davis,* 38 Miss. 574, that the will, once made according to the contract, would be irrevocable in regard to the particular property to be devised; the will can not be revoked so as to destroy the binding contract, that is all." (1 Jarman on Wills, 6th ed., Bigelow's note, pp. 19, 20.)

"Nor would it be inconsistent with what has been said to say that one may bind oneself by contract not to revoke one's will. There is no way of preventing a person from breaking such agreement. The instrument, being a will and not itself creating rights while the testator is alive, may be revoked by him. It matters not as regards that power of revocation that by some other transaction the testator has bound himself not to revoke the will; such fact would avail nothing in a court of probate upon an attempt to set up a will which the testator had revoked according to law. All that the external agreement amounts to is that if it is broken the courts will enforce performance of the thing promised, out of the estate of the party bound, after his death." (Bigelow on Wills, p. 110.)

"The general rule under which the revocable character of wills is universally admitted to exist is subject to a seeming exception, where the execution of the will is a part of a contract to make a will, and the person

in whose favor the devise was made has gone into possession and made expenditures upon faith in the contract. Perhaps it is hardly correct to claim that the will is irrevocable. While the testator may destroy the will or execute another revoking it, the contract itself can not be rescinded, and will be enforced by the court in favor of the person who has acted upon it." (1 Underhill on the Law of Wills, § 289.)

As already pointed out, Mrs. Nelson did not promise to devise specific real estate to her husband, but to leave to him such property, real and personal, as she should own at the time of her death. The plaintiff's claim is subordinate to that of creditors of the estate. If the personal property is insufficient to pay all valid demands, so much of the real estate as may be necessary for the purpose may be sold by the executor. The will contained a provision for the erection of a monument at the testator's grave, at a cost of not over one hundred dollars. This amount is obviously reasonable. The statute gives funeral expenses priority over all other demands against the estate of the decedent. (Gen. Stat. 1909, § 3515.) "The expense of erecting a suitable monument over the grave of deceased is to be classed among the funeral expenses." (4 Words & Phrases, p. 3008.) Therefore the executor is authorized to carry out this provision of the will, even if the sale of a part of the real estate is thereby made necessary.

The plaintiff alleges in his petition that the first will, which he accepted as a compliance with the agreement, contained a provision requiring him to pay to his wife's son, Clarence Schoonover, five hundred dollars, "at such times and in such amounts as he could without inconvenience to himself." The requirement to pay the amount named was absolute, notwithstanding the qualification respecting time and manner, which should doubtless be construed as requiring payment to be made within a reasonable time. (*Benton v. Benton*, 78 Kan. 366, 97 Pac. 378, 130 Am. St. Rep. 376, 27 L. R. A., n. s., 300; see, also, L. R. A. note.) It is not

a substantial impairment of the plaintiff's rights under the original will to make this five hundred dollars a direct charge upon the estate, and to require it to be handled by a trustee for the benefit of the testator's son, instead of being paid to him outright. The new will is therefore enforceable to the extent that the executor may set apart to himself, in his capacity as trustee for Clarence Schoonover, the sum of five hundred dollars, to be derived if necessary from the sale of real estate.

· The defendants maintain that the plaintiff is not entitled to enforce the contract with his wife, because he had violated it by causing the title to one tract of land to be taken in their joint names instead of in the name of his wife as the agreement required. This tract was afterwards sold, and the proceeds were invested in land the title to which was taken in the name of the wife. We do not think the fact that for a time the title was allowed to rest in both the husband and wife is fatal to a recovery on the contract.

The judgment of the district court is modified to this extent: the provision setting aside the will is vacated; the provisions for vesting the title to the real estate in the plaintiff are affirmed, subject to the qualification that in the absence of sufficient personal property so much of it may be sold by the executor as proves to be necessary for the purposes hereinbefore indicated.